[Cite as *State v. Deaton*, 2026-Ohio-2653.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2025-09-084 |
| vs. | : | OPINION AND JUDGMENT ENTRY 7/13/2026 |
| PARKER COLE DEATON, | : | |
| Appellant. | : | |
| | : | |


CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 25CR42561


David P. Fornshell, Warren County Prosecuting Attorney, and Kirsten A. Brandt, Assistant Prosecuting Attorney, for appellee.

Clyde Bennett II, and Paul Croushore, for appellant.


## **O P I N I O N**


**M. POWELL, J.**

{¶ 1} Parker Cole Deaton appeals his convictions for rape. Finding no error, we affirm.

**I. Factual and Procedural Background**

{¶ 2}   In August 2024, Jane (the pseudonym that we use for the minor victim to protect her privacy) was ten years old and living in Lebanon, Ohio, with her parents and her older sister, who was 15. She played on a 15U softball team with her sister. It was through her sister that Jane first met Deaton, a 20-year-old who sold marijuana vape cartridges.

{¶ 3}   Jane's sister purchased "weed vapes" from him. On one occasion, the sister had messaged Deaton on Snapchat under the handle "Pgotbandx19," and he had met her at night at a stop sign in their neighborhood. Jane had been with her sister when Deaton pulled up. On another occasion, Jane's sister had contacted Deaton to purchase a vape cartridge using Jane's cellphone. Deaton met Jane and her sister one afternoon at a different stop sign in their neighborhood. It was Jane who walked up to his car and took a cartridge through the open window.

{¶ 4}   After that afternoon meeting, Jane began trading "snaps" and "streaks" with Deaton on Snapchat.[1] She sent him a message a couple of times to purchase vape cartridges for her sister. On one occasion, Jane asked to purchase a cartridge but told him she could not meet that day because she had softball. He asked whether she played, and she said she played select softball. In a separate exchange, he asked Jane her age. Knowing he refused to sell to anyone under 14, Jane told him she had just turned 14.

{¶ 5}   One night, Jane's sister used Jane's phone to message Deaton for another cartridge and asked Jane to handle the pickup. Around 3:00 a.m., Jane met Deaton at the stop sign near her house. Deaton told her he had left the cartridge at home and asked her to ride with him to get it. She hesitated, then agreed. During the drive Jane asked his

---

1. A "snap" is a photo or video sent to a friend on Snapchat. A "streak" occurs when two Snapchat users send snaps to each other for at least three consecutive days.

real name. He told her "Parker," adding that he did not usually give it out to customers. Deaton then drove to his house in Franklin, picked up the cartridge, and started back toward Lebanon.

{¶ 6} He did not take her home. Instead, he pulled into the parking lot of the Concord Square Apartments. When Jane told him this was not where she lived, he said nothing. He locked the doors, climbed across the center console, and reclined the passenger seat in which Jane was sitting. With one hand he pinned her by the chest. With the other he pulled off her shorts and underwear. Jane screamed at him repeatedly to stop. He did not. Deaton digitally penetrated her and then engaged in vaginal intercourse, biting her lip until it bled and bruised. At some point Jane shoved him hard enough that his head struck the windshield, and he climbed back into the driver's seat. Deaton then drove her to a stop sign near her home, let her out, threw the vape cartridge out the window, and drove off.

{¶ 7} Jane got home shortly before 4:30 a.m. Her sister was still up. She saw Jane crying and saw the bruise that had begun to form on her lip. Jane would not say what had happened but said only, several times, that her sister did not want to know. Within the hour, Deaton was messaging Jane again on Snapchat. He would later supply her with a Plan B contraceptive pill. Eventually, Jane told her mother what had happened.

{¶ 8} Detective Josh Holbrook of the Lebanon Police Department handled the investigation. He conducted a forensic search of Jane's cellphone but found little other than one "snap" exchanged with Deaton in November 2024. Detective Holbrook also served a search warrant on Snapchat to obtain the chats between Deaton and Jane. But since chats were only saved for a short period of time, there were none.

{¶ 9} On January 23, 2025, Detective Holbrook called Deaton on a recorded line. The call lasted roughly 40 minutes and took place in the early afternoon. Deaton, the

father of a young child and the son of a police officer, was at home for the entirety of the call, which had a conversational tone throughout. At the outset, Deaton denied knowing Jane or knowing the area where the offense had occurred. As the conversation went on, however, he conceded a great deal. He acknowledged driving a girl from a stop sign in her neighborhood to his home in Franklin and back, to pick up a vape cartridge. He acknowledged having sex with her in his car in the parking lot of a Lebanon apartment complex. He acknowledged both digital penetration and vaginal intercourse, with the girl in the passenger seat. He acknowledged afterward bringing her a Plan B pill. He admitted having visited her neighborhood two or three times and acknowledged that the girl's older sister had been the one who first put him in touch with her. Throughout, he insisted that the encounter had been consensual. Near the end of the call, and without being asked, Deaton volunteered that the girl he had been with was "a senior in high school, who was eighteen years old, about to be graduated and she played softball."

{¶ 10} On March 31, 2025, Deaton was indicted on four counts of rape of a child under 13 years of age under R.C. 2907.02(A)(1)(b), two of which carried the specification that he purposely compelled submission by force or threat of force. Two counts rested on digital penetration; the other two on vaginal intercourse. Through pretrial discovery, defense counsel obtained the recorded interview. The case was tried to a jury over two days in August 2025. Jane and Detective Holbrook testified. The recording of the January 23 call was played for the jury.

{¶ 11} Jane testified that after one of the earlier transactions her sister had remarked that the seller "looks pretty old. Not like old, but older." Defense counsel objected without stating a basis, and the court overruled the objection. Later, the prosecutor asked Jane whether Snapchat messages "stay there forever." She answered, "Well, when me and Parker were communicating he had set the messages on

immediately delete." Defense counsel objected that the answer was not responsive. That objection was likewise overruled. At the close of the State's case, defense counsel moved for a judgment of acquittal under Crim.R. 29, focusing his argument on the element of force. The trial court denied the motion.

{¶ 12}  The jury found Deaton guilty on all four counts. At sentencing on September 18, 2025, the trial court merged the two digital-penetration counts and merged the two vaginal-intercourse counts, imposed an indefinite aggregate prison term of 25 years to life in prison, and classified Deaton as a tier III sex offender.

{¶ 13}  Deaton appealed.

## II. Analysis

{¶ 14}  Deaton raises three assignments of error. He first claims that he was denied effective assistance of counsel. He also challenges two evidentiary rulings the trial court made during Jane's direct examination. Finally, he argues that his convictions are not supported by sufficient evidence and are against the manifest weight of the evidence.

### A. Ineffective Assistance of Counsel

{¶ 15}  The first assignment of error alleges:

> TRIAL COUNSEL WAS INEFFECTIVE ON THE RECORD BY FAILING TO REALIZE THAT THE STATEMENT OF HIS CLIENT THAT A GIRL WITH WHOM HE HAD SEX PLAYED SOFTBALL, THEREBY TURNING A STATEMENT THAT THE DEFENDANT MADE IN HIS INTERVIEW INTO AN ADMISSION.

{¶ 16}  Deaton argues in the first assignment of error that his trial counsel rendered constitutionally ineffective assistance by failing to foresee that the State would seize on a single word, "softball," from the recorded phone call between Detective Holbrook and Deaton and by failing to move to suppress or otherwise object to the recording's admission.

{¶ 17} During his trial testimony, Detective Holbrook conceded that he employed certain interviewing techniques to get Deaton to talk and keep him talking: feeding Deaton details of the alleged offense, exaggerating the strength of the evidence against him, and falsely claiming to have the parties' Snapchat messages in hand.[2] While Deaton at first denied even knowing the girl Detective Holbrook was asking about, he eventually conceded that he did know whom Holbrook meant, telling the detective, "I knew her as a senior in high school, who was eighteen years old, about to be graduated and she played softball."

{¶ 18} According to Deaton, had counsel recognized the significance of his offhand reference to a girl who "played softball," counsel could have moved to exclude or suppress the recording, advised him accordingly, and either negotiated a more favorable plea or pursued a better strategy at trial.

### 1. Standard of Review and Governing Law

{¶ 19} A claim of ineffective assistance of counsel is governed by the now-familiar two-prong analysis of *Strickland v. Washington*, 466 U.S. 668, 687-688 (1984). The defendant must show, first, that counsel's performance was deficient, in that it fell below an objective standard of reasonableness, and second, that the deficient performance prejudiced the defense. *See State v. Villani*, 2019-Ohio-1831, ¶ 9 (12th Dist.). Counsel's conduct is presumed to fall within the wide range of reasonable professional assistance, and that presumption is a strong one. *State v. Bradley*, 42 Ohio St.3d 136, 142 (1989). We assess counsel's choices considering all the circumstances surrounding the trial without resort to hindsight. *Strickland* at 689. Even debatable strategic and tactical

---

2. Deaton refers to these techniques as the "Reid Technique," which is "an interrogation method used to elicit a confession." *United States v. Mallory*, 902 F.3d 584, 596 (6th Cir. 2018). Detective Holbrook did not use that term.

choices ordinarily do not amount to constitutional ineffectiveness. *Villani* at ¶ 35. Failure on either prong defeats the claim. *Strickland* at 697.

**2. Deficient Performance**

{¶ 20} Deaton points to no motion counsel could have filed with a realistic chance of prevailing, and no objection that should have been sustained had it been raised.

{¶ 21} Deaton's own statements on the recorded call were properly admitted. Evid.R. 801(D)(2)(a) removes from the definition of hearsay any statement "offered against a party" that is "the party's own statement, in either an individual or representative capacity." Deaton's responses to Detective Holbrook fit comfortably within the rule as a party admission. And Deaton has not pointed us to any particular portion of those statements that would have been excludable on some other evidentiary ground.

{¶ 22} Nor does Deaton tell us on what legal theory a motion to suppress could have been brought. The only colorable constitutional basis for excluding a non-custodial recorded telephone statement is involuntariness. "'In deciding whether a defendant's confession is involuntarily induced, the court should consider the totality of the circumstances,'" weighing "'the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement.'" *State v. Bays*, 87 Ohio St.3d 15, 22, 1999-Ohio-216, quoting *State v. Edwards*, 49 Ohio St.2d 31 (1976), paragraph two of the syllabus. Deaton was 20 years old, an adult, with a child of his own and a father in law enforcement. He spoke to the detective by telephone, from his own home, in the early afternoon. The call lasted around 40 minutes. The tone was conversational throughout, and nothing in the recording suggests Deaton could not have ended the call whenever he wished. The detective's use of deceptive interview techniques does not alter the analysis. *See State v. White*, 2020-Ohio-3313, ¶ 20 (12th Dist.) (stating

- 7 -

that "police may lie to a suspect during an interview without such deceit per se rendering a confession involuntarily given"); *Bays* at 23 (stating that "'[a] defendant's will is not overborne simply because he is led to believe that the government's knowledge of his guilt is greater than it actually is'"), quoting *Ledbetter v. Edwards*, 35 F.3d 1062, 1070 (6th Cir. 1994). Nothing in the record suggests that Deaton's will was overborne.

{¶ 23} Where a defendant's constitutional rights have not been violated, counsel has no obligation to move to suppress. *State v. Lester*, 126 Ohio App.3d 1, 6 (12th Dist. 1998). And even when some evidence might support suppression, we "presume that defense counsel was effective if 'the defense counsel could reasonably have decided that the filing of a motion to suppress would have been a futile act.'" *State v. Brown*, 2002-Ohio-5455, ¶ 11 (12th Dist.), quoting *State v. Edwards*, 1996 WL 388761, *2 (8th Dist. Jul. 11, 1996). Here, a motion to suppress had no plausible chance of success, and counsel cannot be faulted for choosing not to file one. *See Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986) (defendant claiming ineffective assistance on a failure-to-suppress theory must show that the underlying claim "is meritorious").

{¶ 24} Deaton's reliance on Crim.R. 12(C) and *State v. Palmer*, 2012-Ohio-580, ¶ 22, gets him no further. Both authorities stand for the unremarkable proposition that a trial court may entertain pretrial evidentiary motions. But a motion in limine asking the court to redact the word "softball" from Deaton's own admissions would have invoked no recognized evidentiary rule. The word is not unduly prejudicial under Evid.R. 403; it is not hearsay when offered against the speaker; and it is not subject to any privilege. Counsel cannot be deemed deficient for declining to invent an objection.

{¶ 25} Lastly, the assertion that defense counsel "never saw it coming" is not supported by the record. The recording was disclosed in discovery, and counsel's cross-examination of Detective Holbrook reflects familiarity with its contents. The Sixth

Amendment does not require trial counsel to anticipate every use the prosecution might later make of admissible evidence. "Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time." *State v. Cook*, 65 Ohio St.3d 516, 524-525 (1992), citing *Strickland*, 466 U.S. at 687-689.

### 3. Prejudice

{¶ 26} Deaton cannot establish prejudice either. Deaton must show "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different,'" a probability "'sufficient to undermine confidence in the outcome.'" *Bradley*, 42 Ohio St.3d at 142, quoting *Strickland* at 694. He has not.

{¶ 27} Deaton treats the word "softball" as the crucial piece of the State's case. But strike it from the recording, and his own voice still places him in Jane's narrative. He picked the girl up near her house in the early morning hours. He drove her to his home in Franklin to retrieve a forgotten vape cartridge. He drove back to Lebanon. He stopped in the apartment complex parking lot, had sex with her in the passenger seat of his car, then went and obtained Plan B contraceptive for her afterward. He identified the older sister as the original source of the vape transactions. Those admissions go to identity, and they go to the act itself. Subtracting one word from the call does not meaningfully weaken any of them.

{¶ 28} The first assignment of error is overruled.

### B. Evidentiary Rulings

{¶ 29} The second assignment of error alleges:

> THE TRIAL COURT ABUSED ITS DISCRETION IN OVERRULING DEFENSE OBJECTIONS AT TRIAL.

{¶ 30} Deaton's second assignment of error challenges two evidentiary rulings made during Jane's direct examination. The first concerns her sister's statement about

Deaton's age, and the second concerns the immediate deletion of Snapchat messages.

### 1. Standard of Review

{¶ 31} We ordinarily review a trial court's evidentiary rulings for abuse of discretion. *State v. Gray*, 2012-Ohio-4769, ¶ 25 (12th Dist.). But that deferential review presupposes that the appellant preserved his evidentiary challenge in the trial court. Evid.R. 103(A)(1) requires a party to make "a timely objection or motion to strike . . . stating the specific ground of objection, if the specific ground was not apparent from the context." A party who fails to lodge a timely and specific objection "waives all but plain error regarding its [the evidence's] admission." *State v. Short*, 2010-Ohio-1526, ¶ 18 (12th Dist.), citing Evid.R. 103(A) and (D); *see also* Crim.R. 52(B). Plain error exists only where there has been a deviation from a legal rule, the deviation is an obvious defect in the proceedings, and the outcome of the trial would clearly have been different absent the error. *Id*.

### 2. The Sister's Statement About Deaton's Age

{¶ 32} The first ruling Deaton challenges concerns Jane's testimony that her sister, after an earlier encounter at a stop sign, said the seller "looks pretty old. Not like old, but older." Defense counsel made only a bare "objection," which the trial court overruled without elaboration. Because no ground was stated and none was apparent from the context, our review is for plain error.

{¶ 33} Deaton contends that the statement was inadmissible hearsay. Even assuming he is correct, its admission did not clearly affect the outcome of the trial. The challenged statement was offered, at most, to suggest that Deaton was older than the victim. But Deaton's age was undisputed in the record, and the jury independently could perceive his approximate age from the recorded interview. So the sister's lay impression that he "looks pretty old" added nothing material. Even if admission was error, the error was harmless given that it was cumulative of other trial testimony. *See State v. Tunstall*,

2020-Ohio-5124, ¶ 98 (12th Dist.).

{¶ 34} Nor, in any event, was Deaton's age a meaningfully contested element. Rape under R.C. 2907.02(A)(1)(b) turns on the victim's age, not the offender's, and the statute attaches strict liability with respect to the offender's knowledge of the victim's age. R.C. 2907.02(A)(1)(b) ("whether or not the offender knows the age of the other person"). A fleeting reference to the sister's impression that the seller "looks pretty old" could not have tipped a verdict that turned overwhelmingly on Jane's detailed account of the assault and Deaton's own corroborative statements.

### 3. The Snapchat "Immediately Delete" Testimony

{¶ 35} The second ruling concerns Jane's response to the prosecutor's question, "Does that message stay there forever?" Jane answered: "Well, when me and Parker were communicating he had set the messages on immediately delete." Defense counsel objected on the ground that the answer was "not responsive to the question." The trial court overruled that objection.

{¶ 36} Deaton argues that this statement too was inadmissible hearsay. But that argument was not preserved. Evid.R. 103(A)(1) requires "a timely objection or motion to strike . . . stating the specific ground of objection, if the specific ground was not apparent from the context." A nonresponsiveness objection is not a hearsay objection, and nothing in the surrounding exchange made the hearsay ground apparent. The failure to state hearsay as a basis at trial therefore "waives all but plain error regarding its admission." *Short*, 2010-Ohio-1526, at ¶ 18 (12th Dist.).

{¶ 37} The objection that Deaton did make was properly overruled. The prosecutor asked whether Snapchat messages "stay there forever," and Jane's answer described how long the messages between her and Deaton remained accessible. That was responsive, even if it volunteered additional detail.

{¶ 38} In any event, the testimony was not hearsay at all. Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Jane was not relaying any out-of-court statement. She was describing her own observation of the way her exchanges with Deaton functioned on the Snapchat app. A defendant's manipulation of an app setting is not an "assertion" intended to communicate a fact, so it falls outside the definition of a "statement" in Evid.R. 801(A). Deaton's act of toggling a setting was not intended as an assertion to anyone, and even if Jane's testimony recounted the resulting conduct, it was not a statement. To the extent Deaton complains about the foundation for Jane's knowledge of who set the option, that is an Evid.R. 602 personal-knowledge concern that was never raised.

{¶ 39} The State, moreover, did not use the testimony to prove Deaton's "intent" to conceal evidence, as Deaton now suggests. Jane herself later clarified that the immediate-delete option is "the chat setting" that applies to "all messages, unless it's saved." The testimony's only real function was to explain the otherwise puzzling absence of Snapchat messages in the record. There is no reasonable probability that the brief reference to Deaton's app setting altered the verdict, much less the higher showing required to establish plain error.

### 4. Conclusion

{¶ 40} The trial court did not abuse its discretion in overruling the objections that were specifically made. And Deaton has failed to show plain error in the admission of the challenged testimony.

{¶ 41} The second assignment of error is overruled.

### C. Sufficiency and Weight of the Evidence

{¶ 42} The third assignment of error alleges:

THE TRIAL COURT ERRED IN DENYING THE DEFENDANT'S RULE 29 MOTION TO DISMISS FOR INSUFFICIENCY OF THE EVIDENCE AND IN NOT DISMISSING THE STATE'S CASE BASED ON ITS MANIFEST WEIGHT.

{¶ 43} In his third assignment of error, Deaton argues that the trial court erred in denying his Crim.R. 29 motion for judgment of acquittal because the evidence was insufficient to sustain his convictions. In the alternative, Deaton contends that his convictions were against the manifest weight of the evidence.

## 1. Standards of Review

{¶ 44} A Crim.R. 29(A) motion tests the legal sufficiency of the State's evidence, and our review proceeds under the standard governing any sufficiency challenge. *State v. Robinson*, 2015-Ohio-4533, ¶ 37 (12th Dist.). The question is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. Sufficiency tests the adequacy of the State's case, not the believability of its witnesses. We ask only whether the State met its burden of production. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997-Ohio-52; *State v. Pountney*, 2018-Ohio-22, ¶ 19.

{¶ 45} A manifest-weight challenge is "both quantitatively and qualitatively different." *Thompkins* at paragraph two of the syllabus. Sitting as a "thirteenth juror," we review the entire record, weigh the evidence and reasonable inferences, consider the credibility of witnesses, and decide whether the jury "'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Id.* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983). That discretionary power is reserved for "'the exceptional case in which the evidence weighs heavily against the conviction.'" *Id.*, quoting *Martin* at 175.

- 13 -

## 2. Sufficiency of the Evidence

{¶ 46} To convict Deaton under R.C. 2907.02(A)(1)(b), the State had to prove that he engaged in sexual conduct with a person less than 13 years of age. The offender's knowledge of the victim's age is immaterial. It is rape "whether or not the offender knows the age of the other person." R.C. 2907.02(A)(1)(b). For the force specification attached to two of the rape charges, the State had to prove the additional element that Deaton purposely compelled Jane "to submit by force or threat of force." R.C. 2971.03(B)(1)(c); R.C. 2907.02(B).

{¶ 47} Taken in the light most favorable to the State, Jane's testimony satisfied every element. She testified that she was ten years old on the night of the offense; that Deaton, after driving her away from her neighborhood, locked the car doors and climbed atop her in the reclined passenger seat; that he held her down by the chest with one hand while pulling off her shorts and underwear with the other; that he digitally penetrated her and then engaged in vaginal intercourse over her continued screams to stop; and that he bit her lip until it bled, leaving a bruise. That testimony, if believed, was alone enough. "'[T]here is nothing in the law that requires that a sexual assault victim's testimony be corroborated as a condition precedent to conviction.'" *Robinson*, 2015-Ohio-4533, at ¶ 41 (12th Dist.), quoting *State v. West*, 2006-Ohio-6259, ¶ 16 (10th Dist.).

{¶ 48} Deaton's argument largely ignores the elements of the offense. Defense counsel's Crim.R. 29 motion was directed at the question of force, but Jane's account of the locked doors, her pinned chest, her bitten lip, and her screams easily permitted a rational juror to find purposeful compulsion by force. The only other elements were sexual conduct and the victim's age. Deaton's argument, that the detective's interview techniques tainted his recorded admissions, has no merit here. The State's case did not depend on Deaton's confession; it rested on Jane's direct testimony. Viewing that evidence in the

- 14 -

light most favorable to the State, any rational juror could find each element of each offense beyond a reasonable doubt.

### 3. Manifest Weight of the Evidence

{¶ 49} The manifest-weight inquiry poses a different question, but the answer is the same. Deaton's contention, in essence, is that Detective Holbrook fed him the facts of the offense during the recorded interview, and that, without those answers, the State's evidence rests on the uncorroborated word of a child.

{¶ 50} Jane's testimony does not stand or fall with the recorded interview. She supplied the above-recounted details of the offense, from the route Deaton drove to the locked doors of the car to the position of his hands on her body. A rape conviction may be sustained on a victim's testimony even without corroboration. The absence of physical corroboration does not, of itself, render a verdict against the manifest weight. *State v. Hendrix*, 2025-Ohio-1556, ¶ 22 (8th Dist.). Here, there was corroboration.

{¶ 51} The jury heard the recording of the interview and was free to draw its own conclusions about whether Deaton was making admissions. That was a credibility judgment. "[T]he jury, as the original trier of fact, was in the best position to judge the credibility of witnesses and determine the weight to be given the evidence." *State v. B.J.T.*, 2017-Ohio-8797, ¶ 23 (12th Dist.).

{¶ 52} Deaton's emphasis on the "softball" detail, repeated throughout his brief, is more of a complaint about his defense counsel's preparation, an issue we have addressed in his first assignment of error. For purposes of the manifest-weight inquiry, the key point is that the State's case did not stand on a single utterance during the recorded interview. It stood on the victim's detailed testimony to the assault she suffered and on the defendant's own acknowledgments of having had sex with her in his car. This is not the exceptional case in which the evidence weighs heavily against the conviction.

{¶ 53} The third assignment of error is overruled.

### III. Conclusion

{¶ 54} We have overruled each of the assignments of error presented. The trial court's judgment is affirmed.

HENDRICKSON, P.J., and SIEBERT, J., concur.

## J U D G M E N T   E N T R Y

The assignments of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, affirmed.

It is further ordered that a mandate be sent to the Warren County Court of Common Pleas for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed in compliance with App.R. 24.

*/s/ Robert A. Hendrickson, Presiding Judge*

*/s/ Mike Powell, Judge*

*/s/ Melena S. Siebert, Judge*